FILED

2008 Mar-31  AM 11:54
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| SHERLYN WRIGHT, | ) |
| | ) |
| **Debtor and Appellant,** | ) |
| | ) |
| vs. | )     Civil Action No. CV-07-S-1109-E |
| | ) |
| 21st MORTGAGE CORP., *et al.*, | ) |
| | ) |
| **Creditors and Appellees.** | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on appeal from a final judgment entered on May

16, 2007, by the United States Bankruptcy Court for the Northern District of

Alabama.   The appellant, Sherlyn Wright, was the debtor in the bankruptcy

proceedings below.  She appeals the bankruptcy court's entry of summary judgment

and dismissal of her claim under the Credit Repair Organizations Act, 15 U.S.C. §

1679 *et seq* ("CROA").[1]  This court has jurisdiction over the appeal pursuant to 28

U.S.C. § 158(a).

## I.  STANDARD OF REVIEW

A district court assumes the role of an appellate court when reviewing the

decision of a bankruptcy court.  *See* 28 U.S.C. § 158(a).  A bankruptcy court's finding

---

[1] *See* Bankr. doc. no. 90.

of fact must be upheld on appeal unless deemed clearly erroneous. *See* Bankr. R.

8013; *In re Downtown Properties, Ltd.,* 794 F.2d. 647, 651 (11th Cir. 1986).  A

finding of fact is clearly erroneous when, "although there is evidence to support it,

the reviewing court on the entire evidence is left with the definite and firm conviction

that a mistake has been committed." *United States v. U.S. Gypsum,* 333 U.S. 364, 395

(1948).  Determinations of law, on the other hand, are reviewed under a *de novo*

standard of review.  *See In re Kalter*, 292 F.3d 1350, 1352 (11th Cir. 2002).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

As all parties have adopted the Statement of the Case and the Statement of

Facts from the bankruptcy court's memorandum opinion,[2] so will this court.  The

bankruptcy court summarized plaintiff/appellant's claims as follows:

> On March 11, 2005, the debtor/plaintiff Sherlyn Wright
> ("Wright") filed a petition for relief under chapter 13 of the Bankruptcy
> Code (11 U.S.C. § 101 *et seq.*).  On June 15, 2005, Wright filed her
> complaint against defendant 21st Mortgage Corporation claiming 21st
> Mortgage violated provisions of the Truth in Lending Act, 15 U.S.C. §
> 1601 *et seq.* ("TILA"), by failing to make required disclosures when it
> extended a loan to Wright, which she used to finance her purchase of a
> mobile home.  On June 1, 2006, Wright amended and restated her
> complaint.  In her amended complaint, Wright still maintained her TILA
> claim against 21st Mortgage, and she added a claim against 21st
> Mortgage for breach of contract.  However, the most significant
> amendments were the addition of defendants Minton Industries, Inc.,

---

[2] *See* doc. no. 2 (appellant/plaintiff's brief), at 1; doc. no. 4 (brief of defendants/appellees
Phillip Ledbetter and G.B. Daniell Realty, Inc.), at 1; doc. no. 5 (brief of defendant/appellee Silver
Run Enterprises, LLC), at 7-8.

Silver Run Enterprises, LLC, G.B. Daniell d/b/a Daniell Realty Co., Phillip C. Ledbetter, Rodney L. Minton and Terri Harmon, and the claims asserted against them. With one exception [not relevant here], all the claims asserted against the additional defendants were based on violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.,* [sic] ("CROA" or the "Act"). The new CROA claims were not asserted against 21st Mortgage.

Minton Industries and its two agents, Rodney L. Minton and Terri Harmon (collectively, the "Minton Defendants"), filed a motion to enforce an arbitration agreement they had with Wright. The Court granted their motion, and the prosecution of the claims against the Minton Defendants was stayed pending the outcome of the arbitration proceedings. . . . .

. . . .

[In her amended complaint,] Wright alleged Silver Run executed and recorded a warranty deed that conveyed a mobile home lot in her name, and Daniell and Ledbetter appraised the lot. Although the amended complaint is somewhat unclear, apparently Wright contends Silver Run executed and recorded the deed without her permission, or at least not for the consideration evidenced by the deed. In any event, Silver Run allegedly made the deed for the purpose of falsely enhancing Wright's creditworthiness, credit standing, and credit capacity in the eyes of 21st Mortgage, to whom she had applied for a loan to finance her purchase of a mobile home. In other words, the deed was made to mislead 21st Mortgage into believing Wright owned the real estate on which the mobile home would be installed, and she was in a position to offer 21st Mortgage a mortgage on this real estate as additional collateral and equity for the proposed loan. Wright contends Daniell and Ledbetter submitted an untrue appraisal of the mobile home lot to 21st Mortgage and likewise misled 21st Mortgage with respect to Wright's creditworthiness, credit standing, and credit capacity.[3]

### III.  DISCUSSION

---

[3] Bankr. doc. no. 89 (memorandum opinion), at 1-4 (footnotes omitted).

Wright bases her CROA claim on 15 U.S.C. § 1679b(a)(1)(B), which states:

No *person* may —

> (1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by *the credit repair organization*, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's creditworthiness, credit standing, or credit capacity to —

> . . . .

> (B) any person —

>> (i) who has extended credit to the consumer; or

>> (ii) to whom the consumer has applied or is applying for an extension of credit[.]

15 U.S.C. § 1679b(a)(1)(B) (emphasis supplied).

Phillip Ledbetter, G.B. Daniell Realty, Inc., and Silver Run Enterprises — the remaining defendants to Wright's CROA claim — argue that they are not subject to § 1679b because they are not "credit repair organizations" as that term is defined by CROA.[4]  Wright concedes that the defendant/appellees are not "credit repair

---

[4] CROA defines a "credit repair organization" as

any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of —

> (i) improving any consumer's credit record, credit history, or credit rating; or

organizations."[5]   Indeed, no entity (party or non-party) involved in the facts underlying this suit can be considered a "credit repair organization."

Even so, Wright argues that the defendant/appellees are covered by CROA, because they are "persons" within the meaning of 15 U.S.C. § 1679b(a).  Therefore, Wright's appeal ultimately turns on the court's construction of the word "person."

The bankruptcy court found that the use of the term "person" in 15 U.S.C. § 1679b(a) indicates that Congress did not intend for the prohibitions of that section to apply *only* to entities that satisfy the statutory definition of a "credit repair organization."  It held, nonetheless, that "liability under CROA is limited to credit

---

        (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (I)[.]

15 U.S.C. § 1679a(3)(A).  The following are excluded from the definition of a "credit repair organization":

        (i) any nonprofit organization which is exempt from taxation under section 501(c)(3) of Title 26;

        (ii) any creditor (as defined in section 1602 of this title), with respect to any consumer, to the extent the creditor is assisting the consumer to restructure any debt owed by the consumer to the creditor; or

        (iii) any depository institution (as that term is defined in section 1813 of Title 12) or any Federal or State credit union (as those terms are defined in section 1752 of Title 12), or any affiliate or subsidiary of such a depository institution or credit union.

15 U.S.C. § 1679a(3)(B).

    [5] Doc. no. 6 (plaintiff/appellant's reply brief), at 1 ("Plaintiff admits that the Defendants are not 'credit repair organizations under the CROA.'").

repair organizations as defined in § 1679a(3), *and* persons who are not credit repair organizations but nonetheless are guilty of the practices prohibited by § 1679b(a)(1) in connection with the activities of, or transactions involving a credit repair organization."[6]  In other words, the bankruptcy court held that the offending entity need not actually *be* a "credit repair organization," but a "credit repair organization" nonetheless must be involved in the offending transaction in *some* way.[7]  This court agrees with the bankruptcy court's analysis.

As Wright has noted, there is "a paucity of authority" construing the term "person" as it appears in § 1679b(a)(1).[8]  The courts that have construed the term — including the bankruptcy court below — appear to be in agreement that "person"

---

[6] Bankr. doc. no. 89, at 22 (emphasis in original).

[7] The bankruptcy court further explained the nuance of its decision in the following footnote:

> It is not necessary for a credit repair organization to be a defendant, so long as the claim against the non-credit repair organization person is related to the practices, services or conduct of a credit repair organization.  For example, if a person, who is not a credit repair organization and is not affiliated with a credit repair organization as its officer, employee or agent, nonetheless joins with or assists a credit repair organization in the misrepresentation of a consumer's creditworthiness to a consumer reporting agency, creditor or potential creditor, that person could be liable for having violated a practice prohibited under § 1679b(a)(1).  That person could not avoid liability, even if the credit repair organization was not named as a co-defendant or did not participate in the prohibited practice, so long as the credit repair organization's involvement, innocent or otherwise, was well-pled in the complaint and ultimately proven.

*Id.* at 22 n.15.

[8] Doc. no. 2 (plaintiff/appellant's brief), at 4.

should not be construed so narrowly as to encompass *only* those entities that also satisfy the statutory definition of a "credit repair organization."  *See, e.g., Martinez v. Freedom Mortgage Team, Inc.,* 527 F. Supp. 2d 827, 840 (N.D. Ill. 2007) ("By using 'person' in [§ 1679b(a)] and 'credit repair organization' in other subsections (such as the prohibition set out in 15 U.S.C. § 1679b(b)), Congress clearly expressed the intention that no entity could engage in the proscribed conduct whether or not that entity qualified as a credit repair organization."); *Henry v. Westchester Foreign Autos, Inc.,* 522 F. Supp. 2d 610, 613 (S.D. N.Y. 2007); *Costa v. Mauro Chevrolet, Inc.,* 390 F. Supp. 2d 720, 727 (N.D. Ill. 2005) ("Caselaw in this district teaches that, even where a plaintiff cannot prove that the defendant is a credit repair organization within the meaning of section 1679a(3)(A) of the CROA, the plaintiff 'can nevertheless state a claim . . . under section 1679b of the CROA.'") (citing *Rodriguez v. Lynch Ford, Inc.,* No. 03 C 7727, 2004 WL 2958772, at *5 (N.D. Ill. Nov. 18, 2004); *Parker v. 1-800 Bar None,* No. 01-4488, 2002 WL 215530, at *5 (N.D. Ill. Feb. 12, 2002); *Bigalke v. Creditrust Corp.,* 162 F. Supp. 2d 996, 999 (N.D. Ill. 2001); *Vance v. Nat'l Benefit Ass'n,* No. 99 C 2627, 1999 WL 731764, at *4 (N.D. Ill. Aug. 26, 1999)); *Helms v. Consumerinfo.com, Inc.,* 436 F. Supp. 2d 1220, 1229 (N.D. Ala. 2005) (Hopkins, J.) ("While nearly all of the CROA's provisions apply only to credit repair organizations, § 1679b(a) applies to any 'person,' and prohibits

the making of fraudulent or deceptive statements regarding the services of a credit repair organization.") (citing *Bigalke*, 162 F. Supp. 2d at 999).  The foregoing decisions are well-reasoned, and, consistent with the following principle of statutory construction:  "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Brown v. Gardner,* 513 U.S. 115, 120 (1994) (quoting *Russello v. United States,* 464 U.S. 15, 23 (1983)) (bracketed alteration in original).

The finer, and dispositive, issue is whether the term "person" in § 1679b(a) can be construed broadly to include *any* person, or whether the term is limited to "persons" who enter into transactions with, or otherwise have some association with, a "credit repair organization."  Resolving this question again requires the court to consult general principles of statutory construction.

"'As in any case of statutory construction, our analysis begins with the language of the statute.'"  *Edwards v. Kia Motors of America, Inc.,* 486 F.3d 1229, 1233 (11th Cir. 2007) (quoting *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438 (1999) (quotations & citation omitted)).  "When examining the words of a statute, '[i]n the absence of a statutory definition of a term, we look to the common usage of words for their meaning.'" *Huff v. Dekalb County, Georgia,* 516 F.3d 1273 (11th Cir.

2008) (quoting *Consol. Bank, N.A. v. U.S. Dept. of Treasury,* 118 F.3d 1461, 1464 (11th Cir. 1997)) (bracketed alteration in original).  Even so, all "'statutory language must be read in the context of the purpose it was intended to serve.'" *APA Excelsior III L.P. v. Premiere Technologies, Inc.,* 476 F.3d 1261, 1268 (11th Cir. 2007) (quoting *United States v. Ballinger,* 395 F.3d 1218, 1237 (11th Cir.) (*en banc*), *cert denied,* – U.S. –, 126 S. Ct. 368 (2005)).  Thus, "the *language* of a statute should not be considered in a vacuum and divorced from its underlying *purpose.*"  *APA Excelsior III L.P.,* 476 F.3d at 1268 (citing *Ballinger,* 395 F.3d at 1237) (emphasis in original).  "Because the legislature is presumed to act with a sensible and reasonable purpose, a statute should, if at all possible, be read so "''as to avoid an unjust or absurd conclusion.'''"  *APA Excelsior III L.P.,* 476 F.3d at 1268 (quoting *Ballinger,* 395 F.3d at 1237) (in turn quoting *In re Chapman,* 166 U.S. 661, 667 (1897)).  Additionally, "even when the plain meaning [does] not produce absurd results but merely an unreasonable one plainly at variance with the policy of the legislation as a whole this Court has [frequently] followed that purpose, rather than the literal words."  *Edwards,* 486 F.3d at 1233 (citation omitted) (bracketed alterations in original).

Employing the plain meaning of the term "person" to § 1679b(a) would subject

every living human or legal entity to suit under CROA.[9]   Such an expansive

interpretation of the statute would be inconsistent with its stated purposes.  Congress

made explicit findings as to the policies underlying CROA, and codified those

findings in the statute's introductory sections.  Those sections state:

> (1) Consumers have a vital interest in establishing and maintaining their creditworthiness and credit standing in order to obtain and use credit.  As a result, consumers who have experienced credit problems may seek assistance from credit repair organizations which offer to improve the credit standing of such consumers.

> (2) Certain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters.

15 U.S.C. § 1679(a).  Congress also stated the purposes of CROA as:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679(b).

The foregoing statutory language demonstrates that Congress intended to

regulate *the credit repair industry*.  There is no reasonable indication that Congress

---

[9] *Webster's New Riverside Dictionary* defines the term "person" to mean "[a] living human being" or "[a] human being or organization with legal rights and duties."  *Webster's New Riverside Dictionary* 877 (1984).

intended CROA to extend a federal cause of action to *any* person (or entity) that made a false or misleading statement about a consumer's credit to a credit reporting agency, bank, or other actual or potential lender. This court concludes — as did the bankruptcy court below — that, for a "person" to be held liable under 15 U.S.C. § 1679b(a)(1), a "credit repair organization" must be involved in the offending transaction.

## IV. CONCLUSION AND ORDER

Appellants have failed to meet their burden of showing clear error in the bankruptcy court's factual findings, or legal error in its conclusions. Accordingly, the judgment of the bankruptcy court is AFFIRMED. Costs are taxed to plaintiff (appellant herein), and the clerk is directed to close this file.

DONE this 31st day of March, 2008.

United States District Judge